

FILED

SEP 1 2 2012

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

JOYCE GRAHAM and JOYCE LAMPKIN, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

OVERLAND SOLUTIONS, INC. and DOES 1-100, inclusive,

Respondent.

CASE NO. 10-CV-0672 BEN (BLM)

**ORDER GRANTING JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION, APPROVAL OF CLASS NOTICE, AND SETTING OF FINAL FAIRNESS HEARING**

[Docket No. 92]

This action arises from Plaintiffs Joyce Graham's and Joyce Lampkin's former employment as field auditors for Defendant Overland Solutions, Inc. ("OSI"). Field auditors are non-exempt (i.e., hourly) employees who travel from site to site to audit policy premiums for Defendant's insurance-company clients. There are 1,307 field auditors nationwide and 240 in California. Plaintiffs allege that Defendant did not, and does not, pay for billable hours that cannot be charged to a client and that this policy was never disclosed when the auditors were hired. Plaintiffs further allege that Defendant uniformly underpaid, and continues to underpay, its field auditors by routinely cutting reported billable hours and also pressuring auditors to under-report their hours. Auditors are often not aware of the reductions until they receive their paychecks. Several declarations also state that reporting high billable hours subjected time cards to excessive review and caused delays in receiving paychecks.

10cv0672

1 Plaintiffs contend that these employment practices constitute a breach of contract and violate federal
2 and California labor laws.

3       Plaintiffs initiated this action in California Superior Court.  On March 29, 2010, Defendant
4 removed the action to this Court.  On November 30, 2010, Plaintiffs filed a Motion for Rule 23 Class
5 Certification, which sought to certify a nationwide class of field auditors under Federal Rule of Civil
6 Procedure 23, or in the alternative, a statewide class of field auditors for the same claims plus
7 additional claims that arise purely under California law. (Docket No. 23.) This Motion for Rule 23
8 Class Certification was denied on the basis that Plaintiffs' claims are not typical of the class and
9 Plaintiffs would not adequately protect the interests of the class. (Docket No. 74.) Also on November
10 30, 2010, Plaintiffs filed a Motion for Conditional Collective Action and Certification and Notice,
11 pursuant to 29 U.S.C. § 216(b), which sought conditional certification of two claims under the Fair
12 Labor Standards Act: (1) failure to pay overtime and minimum wage by pressuring auditors to not
13 report all hours worked; and (2) failure to pay all wages due by unilaterally cutting billed hours or
14 pressuring field auditors to not report all time worked. (Docket No. 24.) This Motion for Conditional
15 Collective Action and Certification was granted. (Docket No. 75.)

16       Presently before the Court is the parties' Joint Motion for Preliminary Approval of Class
17 Action Settlement, Conditional Certification, Approval of Class Notice, and Setting of Final Fairness
18 Hearing.

19                                       **DISCUSSION**

20       Once parties reach a settlement agreement prior to class certification, the court must "peruse
21 the proposed compromise to ratify both the propriety of the certification and the fairness of the
22 settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The court must (1) assess
23 whether a class exists, and (2) determine whether the proposed settlement is "fundamentally fair,
24 adequate, and reasonable." *Id.* (internal quotation marks omitted). Here, the Court will first examine
25 the propriety of class certification, then the fairness of the settlement agreement, followed by the
26 questions of class counsel and class notice.

27 ///

28 ///

10cv0672

## I.   CLASS CERTIFICATION

A plaintiff seeking a Rule 23(b)(3) class certification must: (1) satisfy the prerequisites of Rule 23(a); and (2) satisfy the requirements of Rule 23(b)(3).   Here, the parties seek provisional certification for settlement purposes only of the following two classes: (1) the "California Class": All OSI Premium Audit Field Representatives employed in California at any time during the Class Period, from February 16, 2006 through February 15, 2012; and (2) the "Nationwide Class": All OSI Premium Audit Field Representatives employed in any office in the United States, other than California, at any time during the Class Period, from February 16, 2006 through February 15, 2012. (Khoury Decl., Exh. 1 [Settl. Agr.] ¶ 5.)

### A.   Rule 23(a) Requirements

Rule 23(a) establishes four prerequisites for class action litigation: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. FED. R. CIV. P. 23(a); *see also Staton*, 327 F.3d at 953.   The Court will examine each prerequisite in turn.

#### 1.   Numerosity

The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).   In the present case, there are 255 California auditors and 1,149 Non-California Nationwide auditors employed by OSI during the Class Period. (Khoury Decl. ¶ 9.)   They are too numerous to be joined as plaintiffs in this action.   Accordingly, the numerosity requirement is met.

#### 2.   Commonality

The commonality requirement is met if "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2).   The commonality requirement is construed "permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).   Not all questions of law and fact need to be common, but rather "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*   In addition, commonality requires that class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

- 3 -

1    Here, there are numerous common questions of law and fact, including: (1) whether OSI had
2    a practice of reducing Billable Hours and pressuring auditors to under-report Billable and Time Card
3    Hours; (2) whether OSI improperly failed to pay supplemental minimum wage; (3) whether the
4    compensation scheme is an improper piece rate system; (4) whether reducing Billable Hours violates
5    the law and, if so, whether underpayment of overtime results; (5) whether a California piece rate
6    employee must also be paid a supplemental minimum wage for non-productive time; and (6) whether
7    excessive drive time should be compensated.  In addition, whether Defendant is liable for damages,
8    penalties, and restitution pursuant to California Labor Code §§ 201-203, 212, 221, 226, 2699 and the
9    UCL are also issues which can be resolved on a class-wide basis. *Alba v. Papa John's USA, Inc.*, No.
10   CV 05-7487 GAF (CTx), 2007 U.S. Dist. LEXIS 28079, at *19-21 (C.D. Cal. Feb. 7, 2007); *see also*
11   *Vizcaino v. U.S. Dist. Ct.*, 173 F.3d 713, 722 (9th Cir. 1999) (employees presented common question
12   that they were denied benefits to which they were entitled as common law employees).  Accordingly,
13   the commonality requirement is met.

14                          **3.      Typicality**

15   Typicality requires that "the claims or defenses of the representative parties [be] typical of the
16   claims or defenses of the class." FED. R. CIV. P. 23(a)(3).  The Ninth Circuit interprets typicality
17   permissively. *Hanlon*, 150 F.3d at 1020.  The representative claims are "typical" if they are
18   "reasonably co-extensive with those of absent class members," though they "need not be substantially
19   identical." *Id.*; *see also Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175
20   (9th Cir. 1990).  The named plaintiffs must be members of the class they seek to represent and they
21   must "possess the same interest and suffer the same injury" as putative class members. *Gen. Tel. Co.*
22   *of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation marks omitted).  It is sufficient for the
23   plaintiff's claims to "arise from the same remedial and legal theories" as the class claims. *Arnold v.*
24   *United Artists Theatre Cir., Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994).

25   Here, Plaintiffs' claims arise from the same factual basis—including a failure to comply with
26   state and federal laws regarding minimum and overtime wages—as those applicable to all Class
27   Members. *Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987); *see also Hanlon*, 150 F.3d
28   at 1020. Plaintiffs were field auditors during the class period. Each was allegedly subject to OSI's

1  practice of reducing Billable Hours and pressuring auditors to under-report Billable and Time Card
2  Hours. In addition, each was allegedly subject to OSI's uniform policies, including failure to pay
3  supplemental minimum wage, using what Plaintiffs allege is an improper piece rate system, using
4  RFCs resulting in untimely wage payments, failing to include post-commute time in aggregate Time
5  Card Time, and failing to pay wages drawn on a bank with a California address. Accordingly, the
6  typicality requirement is met.

7       In the May 9, 2011 Order, the Court previously denied Plaintiffs' motion for Rule 23 class
8  certification on the basis that Defendant has a defense of unclean hands that is unique to Graham and
9  Lampkin, which defeated typicality, *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010).
10 (Docket No. 74). However, Defendant agrees that the typicality requirement is met, for the purposes
11 of settlement.

12                    **4.  Adequacy of Representation**

13      Representative parties must be able to "fairly and adequately protect the interests of the class."
14 FED. R. CIV. P. 23(a)(4). Representation is adequate if the plaintiffs: (1) "do not have conflicts of
15 interest with the proposed class" and (2) are "represented by qualified and competent counsel." *Dukes*
16 *v. Wal-Mart, Inc.*, 509 F.3d 1168, 1185 (9th Cir. 2007). At the heart of this requirement is the
17 "concern over settlement allocation decisions." *Hanlon*, 150 F.3d at 1020.

18      As explained above, the Court previously denied Plaintiffs' motion for Rule 23 class
19 certification on the basis that Defendant has a defense of unclean hands that is unique to Graham and
20 Lampkin, which defeated the adequacy requirement. However, Defendant has waived its objections
21 to Plaintiffs' adequacy to serve as class representatives, for the purposes of settlement. (Khoury Decl.
22 ¶ 66.)

23      In addition, Plaintiffs' attorneys have experience prosecuting class actions. Plaintiffs and the
24 proposed class counsel have indicated that they are willing to pursue this action vigorously on behalf
25 of the class, have thoroughly investigated the class claims, served and responded to discovery, and
26 taken depositions of key employees and corporate representatives. (*Id.* ¶¶ 4-6, 45-59.) Accordingly,
27 the adequacy requirement has been met.

28      For the reasons stated above, Plaintiffs have satisfied the prerequisites of Rule 23(a).

1             **B.**     **Rule 23(b)(3) Requirements**

2          Rule 23(b)(3) requires the court to find that: (1) "the questions of law or fact common to class

3 members predominate over any questions affecting only individual members" ("predominance"); and

4 (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the

5 controversy" ("superiority").

6                   **1.**     **Predominance**

7          The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant

8 adjudication by representation." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted). This

9 analysis requires that common questions of law and fact "present a significant aspect of the case and

10 [that] they can be resolved for all members of the class in a single adjudication." *Id.* (internal

11 quotation marks omitted). The relevant inquiry is whether issues "subject to generalized proof

12 predominate over those issues that are subject only to individualized proof." *Dilts v. Penske Logistics,*

13 *LLC*, 267 F.R.D. 625, 634 (S.D. Cal. 2010) (internal quotation marks and alteration omitted).

14          Here, Plaintiffs' claims present common questions of law and fact, as explained above.

15 Defendant stipulates for settlement purposes that these common questions of law and fact support a

16 finding of predominance. (Jt. Mot. at 24.) Accordingly, the predominance requirement is met.

17                   **2.**     **Superiority**

18          The superiority requirement focuses on the determination of "whether the objectives of the

19 particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023.

20 The class-action method is considered to be superior if "classwide litigation of common issues will

21 reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d

22 1227, 1234 (9th Cir. 1996).

23          Here, Defendant agrees, for purposes of settlement only, that class certification is superior to

24 other methods of adjudication because Plaintiffs' claims are based on common policies and practices

25 that would be most efficiently litigated on a class-wide basis. (Jt. Mot. at 24.) Concentration of class

26 members' claims for settlement purposes is desirable in order to avoid the possibility of duplicative

27 individual matters and inconsistent judicial determinations. Class treatment of the class members'

28 claims would be more manageable than many individual lawsuits brought by current or former

1   Premium Audit Field Representatives.  Moreover, litigation of this matter as a class action will be
2   manageable because damages may be determined through analysis of Defendant's employee and
3   payroll records.  In addition, because of the relatively small individual claims of class members, it is
4   unlikely that individual actions to recover these unpaid wages will be filed.  A Non-California
5   Nationwide Class Member could at most recover $1,892.79, less taxes.  (Khoury Decl. ¶ 31.)  A
6   California Class Member could at most recover $19,878.94, less taxes.  (*Id.* ¶ 32.)  Accordingly, the
7   superiority requirement is met.

8          For the foregoing reasons, Plaintiffs have satisfied the requirements of Rule 23(b)(3).  The
9   Court **GRANTS** preliminary certification of both classes for the purposes of the proposed settlement.
10  The Court, however, may review this finding at the Final Approval Hearing.

11          **II.    THE SETTLEMENT**

12          Rule 23(e) requires the Court to determine whether a proposed settlement is "fundamentally
13  fair, adequate, and reasonable."  *Staton*, 327 F.3d at 959 (internal quotation marks omitted).  In making
14  this determination, a court may consider: (1) the strength of the plaintiff's case; (2) "the risk, expense,
15  complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status
16  throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed,
17  and the stage of the proceedings;" (6) "the experience and views of counsel;" (7) "the presence of a
18  governmental participant;" and (8) "the reaction of the class members to the proposed settlement."
19  *See id.* (internal quotation marks omitted).  Moreover, the settlement may not be the product of
20  collusion among the negotiating parties.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir.
21  2000).

22          Because some of these factors cannot be fully assessed until the Court conducts the Final
23  Approval Hearing, "a full fairness analysis is unnecessary at this stage."  *See Alberto v. GMRI, Inc.*,
24  252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotation marks omitted).  At the preliminary approval
25  stage, the Court need only review the parties' proposed settlement to determine whether it is within
26  the permissible "range of possible approval" and thus, whether the notice to the class and the
27  scheduling of the formal fairness hearing is appropriate.  *Id.* at 666.

28  ///

A.    **The Strength of Plaintiffs' Case and the Risk, Expense, Complexity and**
      **Likely Duration of Further Litigation, and the Risk of Maintaining Class**
      **Action Status Throughout the Trial**

Plaintiffs assert that the proposed settlement is fair and reasonable in light of Defendant's available legal and factual grounds for defending against Plaintiffs' claims. Plaintiffs recognize that there are significant risks to Plaintiffs' ability to maintain this as a class or collective action. (Khoury Decl. ¶ 41.) First, Defendant contends that it has presented significant defenses and good faith objections to Plaintiffs' ability to obtain Rule 23 certification. Defendant asserts that the claims are inappropriate for class treatment because there is a lack of commonality and a predominance of individual inquiry. (*Id.* ¶ 43.) Specifically, Defendant argues that Plaintiffs will not be able to establish class-wide practices and that individual issues would predominate over common facts, especially given the Supreme Court's recent ruling in *Dukes*, which disapproved of the use of sampling and surveys to determine class-wide practices. *See* 131 S. Ct. at 2561. Defendant argues that, as a result, Rule 23 certification would likely be deemed inappropriate and that a motion to decertify the collective action would be successful. (Khoury Decl. ¶ 43.) In addition, Defendant contends that it would be able to decertify the FLSA collective action, because the second step of FLSA collective action certification is nearly identical to that under Rule 23.

Furthermore, Plaintiffs recognize the possibility that there may be an unfavorable result on the merits on summary judgment, at trial, or on appeal. (*Id.* ¶ 40.) Litigation of this action is a process that could take several years. (*Id.*) Taken together, these considerations weigh in favor of preliminary approval of the proposed settlement.

B.    **The Extent of Discovery and the Stage of the Proceedings**

In regards to class action settlements, "formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (internal quotation marks omitted).

Here, the parties appear to have engaged in substantial discovery. The parties have exchanged substantial formal written discovery requests and taken depositions. (Khoury Decl. ¶ 44.)

10cv0672

Specifically, Plaintiffs have served Defendant with four sets of Special Interrogatories, five sets of Requests for Production of Documents, and two sets of Requests for Admission. (*Id.* ¶¶ 45, 51, 53-54.) Moreover, Plaintiffs have conducted informal interviews of an estimated 114 class members. (*Id.* ¶ 48.) Defendant has served each Plaintiff with its Requests for Production of Documents. (*Id.* ¶ 46.) In addition, Defendant has deposed Graham and Lampkin. (*Id.* ¶ 50.) Plaintiffs have deposed Defendant's persons most knowledgeable David Harris, Senior Vice President, and Kevin Kramer, Senior Vice President of Quality Assurance Training and New Product Development, and, in their individual capacities, employees Carol Lyman, Area Manager; Vicky Ross, former General Manager of OSI's Los Angeles Branch Office; and David Goldschlag, former Vice President and General Manager of OSI's Los Angeles Branch Office. (*Id.* ¶ 52.) The parties appear to have thoroughly investigated and evaluated the factual strengths and weaknesses of this case and engaged in sufficient investigation and discovery to support the settlement. (*Id.* ¶ 57.) Accordingly, the extent of discovery and stage of the proceedings weigh in favor of preliminary approval.

### C.     Experience of Class Counsel

Class counsel has experience litigating misclassification, overtime, expense reimbursement, and rest/meal period actions, and have acted as class counsel in numerous employment law cases. (*Id.* ¶ 58.) In addition, Defendant's counsel, Donna M. Rutter and Felicia R. Reid of Curiale Hirschfeld Kraemer, LLP, are experienced in wage and hour employment law and class actions. (*Id.* ¶ 59.) Counsel on both sides believe that this is a fair and reasonable settlement in light of the complexities of the case, the state of the law, and the uncertainties of certification and litigation. Accordingly, this factor weighs in favor of preliminary approval. *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." (internal quotation marks omitted)).

### D.     The Amount Offered in Settlement

A settlement is not judged against only the amount that might have been recovered had the plaintiff prevailed at trial, nor must the settlement provide 100% of the damages sought to be fair and reasonable. *Linney*, 151 F.3d at 1242. There is a "range of reasonableness" in determining whether

10cv0672

to approve settlement "which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The adequacy of the amount recovered must be judged as "a yielding of absolutes . . . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (internal quotation marks omitted). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Id.* at 628.

The three major claims presented by the Class include: (1) the Rule 23 California claims for the unpaid supplemental minimum wage, which were calculated by Plaintiffs' consultant, based upon the difference between the reported and billable hours, to be approximately $2,000,000 with an additional potential interest assessment of $1,100,000; (2) the Nationwide Billable Time Under-payment claims which were calculated based on records and survey data to be approximately $11,480,000; and (3) based on similar data, the California Billable Time Under-payment claims which were calculated at approximately $1,980,000.[1] (Khoury Decl. ¶ 62.)

The parties have agreed to a Maximum Settlement Amount ("MSA") of $3,750,000, which includes, subject to the Court's approval: (1) attorneys' fees in an amount not to exceed 30% of the MSA, or $1,125,000; (2) litigation costs estimated at $55,000; (3) Class Representative enhancements in the sum of $25,000 for Graham and $25,000 for Lampkin; and (4) claims administrative expenses by Rust Consulting, Inc., estimated at $52,500. (*Id.* ¶ 26.) After any Court-approved deductions, the remaining sum (or, the Net Settlement Amount ("NSA")) estimated at $2,320,066.90, will be available for distribution to Class Members. (*Id.* ¶ 27.) The NSA will be allocated between the classes as follows: 66%, or an estimated $1,531,244.10, to the California Class on a non-reversionary basis; and

---

[1] These estimated values do not include the derivative California claims for waiting time penalties or failure to provide itemized wages statements as these claims require willfulness and/or injury, and penalties are discretionary with the Court, thereby making any assessment of such damages highly speculative. (Khoury Decl. ¶ 62.)

34%, or an estimated $788,822.80, to the Non-California Nationwide Class on a reversionary basis. (*Id.* ¶ 29.) A California Class member who has worked the entire class period will recover an estimated $19,878.94, while a Non-California Nationwide Class member who has worked the entire class period will recover an estimated $1,892.79. (*Id.* ¶¶ 31-32.)

Defendant contends that the settlement must discount Plaintiffs' damages calculations to reflect the risks Plaintiffs face in regards to both Rule 23 certification and a potential motion to decertify, as well as the legal challenges Plaintiffs face in ultimately prevailing on their liability theories, as explained above. In addition, the disparity in the allocation between the California Class and the Non-California Nationwide Class appears to be justified by the comparative strengths of the claims. The California Class Members potentially have stronger California claims for failing to pay minimum wages and recalculated overtime wages, a greater likelihood of obtaining Rule 23 certification of the California claims, and a greater likelihood of proving liability and damages on Plaintiffs' supplemental minimum wage and other California statutory claims. (*Id.* ¶ 30.) In light of the uncertainties involved with respect to litigating this action, the Court finds the amounts offered in settlement to be adequate, at least at this stage of the proceedings. *See, e.g., Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (finding settlement of a wage and hour class action for 25 to 35% of the claimed damages to be reasonable in light of the uncertainties involved in the litigation).

### E.   Collusion Between the Parties

The collusion inquiry regards the possibility that the agreement is the result of either the negotiators' overt misconduct or improper incentives for certain class members at the expense of other members of the class. *Staton*, 327 F.3d at 960. Here, there is no evidence of overt misconduct. The Court will focus only on the aspects of the settlement that lend themselves to self-interested action.

First, the distribution between the two classes does not appear to be the result of collusion between the parties. Rather, the disparity in the allocation between the California Class and the Non-California Nationwide Class appears to be justified by the comparative strength of the claims, as explained above.

The proposed class representative enhancements of $25,000 each to Graham and Lampkin

likewise do not appear to be the result of collusion.  The Court evaluates incentive awards using "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Id.* at 977 (internal quotation marks and alterations omitted).  Here, Plaintiffs request $25,000 each for Graham and Lampkin, for their time, effort, risks undertaken for the payment of costs in the event this action had been unsuccessful, stigma upon future employment opportunities for having initiated an action against a former employer, and a general release of all claims related to their employment.

Lastly, the attorneys' fees do not appear to be the result of collusion.  It is permissible for plaintiffs to simultaneously negotiate the merits of the action and attorneys' fees. *Id.* at 971.  Here, the settlement agreement provides that Plaintiffs' counsel would recover an award of attorneys' fees up to 30% of the MSA, or $1,125,00.  (Khoury Decl., Exh. 1 [Settl. Agr.] ¶ 7.C.)  In addition, Plaintiffs' counsel will request reimbursement of their reasonable costs and expenses incurred in connection with the investigation, prosecution, and settlement of this action. (*Id.*)  Plaintiffs' counsel requests that any fees and costs awarded by the Court be paid from the MSA and encompass: (1) all work performed, costs and expenses related to the investigation, prosecution and settlement of this action incurred through the date of the Settlement Agreement; (2) all work to be performed and costs to be incurred in connection with approval by the Court of the Class Settlement; and (3) all work, costs and expenses incurred in connection with administering the Class Settlement through dismissal of this action with prejudice. (*Id.*)

"[T]he choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).  In addition, district courts must explain departures from the "benchmark" of 25% recovery. *Id.* at 1256-57.  Accordingly, the Court has reservations about the substantial recovery of attorneys' fees sought by Plaintiffs' counsel.  However, the Court need not decide this issue at this time.  At this point, the Court merely notes that 30% recovery does not appear to be the result of collusion.

For the above reasons, the Court **GRANTS** preliminary approval of the proposed settlement.

1  However, the Court reserves judgment on the reasonableness of the attorneys' fees for the Final

2  Approval Hearing.

3       **III.   APPOINTING CLASS COUNSEL**

4       The choice of counsel has traditionally been left to the parties, "whether they sue in their

5  individual capacities or as class representatives." *In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002)

6  (internal quotation marks omitted). Here, Plaintiffs' counsel has extensive experience in employment

7  class actions, as discussed above. Accordingly, because Plaintiffs' counsel appears to be competent

8  to represent the classes, the Court **GRANTS** Plaintiffs' motion to appoint Cohelan Khoury & Singer

9  and Michael P. Sousa.

10       **IV.   APPROVING CLASS NOTICE**

11       Class notice must be "reasonably calculated, under all the circumstances, to apprise interested

12  parties of the pendency of the action and afford them an opportunity to present their objections." *See*

13  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Moreover, the class notice

14  must satisfy the content requirements of Rule 23(c)(2)(B), which provides that the notice must clearly

15  and concisely state in plain, easily understood language:

16

17       (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims,
     issues, or defenses; (iv) that a class member may enter an appearance through an

18       attorney if the member so desires; (v) that the court will exclude from the class any
     member who requests exclusion; (vi) the time and manner for requesting exclusion;

19       and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

20

21       Here, the content of the proposed notice is adequate. The proposed notice provides: (1)

22  information on the meaning and nature of the two classes; (2) the terms and provisions of the proposed

23  settlement; (3) the relief that settlement group members will be entitled to, including a specific

24  estimate of the amount to be paid to each eligible member; (4) the costs and fees to be paid out of the

25  MSA; (5) the procedures and deadlines for submitting claim forms, objections, and/or requests for

26  exclusion; and (6) the date, time, and place of the Final Approval Hearing. (*See* Khoury Decl., Exh.

27  A [Proposed Class Notice].) In addition, the method of notice, more fully set forth below, is

28  reasonable.

///

**CONCLUSION**

ACCORDINGLY, GOOD CAUSE APPEARING, THE JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT IS HEREBY GRANTED.

1.      As a part of said preliminary approval, the Court hereby accepts and incorporates the Parties' Settlement Agreement and hereby conditionally certifies the following classes of persons for settlement purposes only pursuant to the terms and conditions contained in said Settlement Agreement:

      A.      The "California Class" or "California Class Members" shall mean all OSI Premium Audit Field Representatives employed in California at any time during the Class Period, from February 16, 2006 through February 15, 2012.

      B.      The "Nationwide Class" or "Nationwide Class Members" shall mean all OSI Premium Audit Field Representatives employed in any office in the United States, other than California, at any time during the Class Period, from February 16, 2006 through February 15, 2012.

2.      The Court approves and appoints Plaintiffs Joyce Graham and Joyce Lampkin as the Class Representatives.

3.      The Court approves and appoints Cohelan Khoury & Singer and Michael P. Sousa as Class Counsel,

4.      The Court approves and appoints Rust Consulting, Inc., as the Claims Administrator to administrate the settlement pursuant to the terms of the Settlement Agreement.

5.      The Court finds that the Notice of Pendency of Class Action, Proposed Settlement and the Claim Form/FLSA Consent Form advise of the pendency of the Class Action, of the proposed settlement, of the preliminary Court approval of the proposed Settlement, claim submission timing and procedures, objection time and procedures, opt-out timing and procedures, and of the Final Approval Hearing date. The Court

10cv0672

further finds that these documents fairly and adequately advise Class Members of the terms of the proposed Settlement and the benefits available to Class Members thereunder, as well as their right to opt-out and procedures for doing so, and of the Final Approval Hearing and the right to file documentation in support or in opposition to the Settlement and to appear in connection with said hearing. The Court further finds that said class Notice and Claim Form/FLSA Consent Form clearly comport with all constitutional requirements including those of due process.

ACCORDINGLY, GOOD CAUSE APPEARING, THE COURT HEREBY APPROVES THE PROPOSED NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT AND THE PROPOSED CLAIM FORM/FLSA CONSENT FORM, ATTACHED TO THE SETTLEMENT AGREEMENT;

6.  The Court finds that the mailing to the present and last known address of the members of the above-named Classes constitutes an effective method of notifying Class Members of their rights with respect to the Class Action and Settlement.

ACCORDINGLY, IT IS HEREBY ORDERED that

(a)  On or before **October 12, 2012**, Defendant shall forward to the appointed Claims Administrator, Rust Consulting, Inc., a database (in an electronic spreadsheet format) containing the names of each Class member, and for each Class Member, his/her last known home address (street, city, and zip code), last known home and/or cellular telephone numbers, last four digits of his/her social security number, location of the OSI office where employed, and the number of weeks worked during the period February 16, 2006 through February 15, 2012, ("Class Period");

(b)  On or before **October 29, 2012**, Rust Consulting, Inc., shall mail to each Class Member, by first class, postage pre-paid, the Notice of Pendency of Class Action and Proposed Settlement, Claim Form/FLSA Consent Form, and pre-printed, postage paid return envelope, collectively "Notice Packet";

(c)     The front of the envelope containing the Notice Packet addressed to a California Class Member, below the return address, shall state the words: "Important Legal Document. If you were employed by Overland Solutions, Inc., as a Premium Audit Field Representative in California during the relevant time period, you may be entitled to recover money from a Class Action Settlement. Your Prompt Attention is Required";

(d)     The front of the envelope containing the Notice Packet addressed to a Nationwide Class Member, below the return address, shall state the words: "Important Legal Document. If you were employed by Overland Solutions, Inc., as a Premium Audit Field Representative in the United States, other than in California, during the relevant time period, you may be entitled to recover money from a Class Action Settlement. Your Prompt Attention is Required";

(e)     All mailings shall be made to the present and/or last known mailing address of the Class Members based on Defendant's records, as well as addresses that may be updated and located by the Claims Administrator who will conduct standard address searches in cases of returned mail as set forth in the Settlement Agreement. The Court finds and so orders that the mailing of notices to Class Members as set forth in this paragraph is the best means practicable by which to reach Class Members and is reasonable and adequate pursuant to all constitutional and statutory requirements including all due process requirements; and

(f)     On or before **November 29, 2012**, the Claims Administrator, shall mail a "reminder" post-card to those Class Members who have not responded to the Notice of Pendency of Class Action and Proposed Settlement with the return of a Claim Form/FLSA Consent Form, or a request for exclusion (if a California Class Member) reminding them of the deadline in which to act to make a claim.

7.    IT IS FURTHER ORDERED that:

(a)    Requests for exclusion ("opt-out requests") must be mailed to the Claims Administrator, Rust Consulting, Inc., postmarked on or before **December 14, 2012**.

(b)    Any Class Member who fails to submit a timely Claim Form/FLSA Consent Form and who also fails to submit a Request for Exclusion from the Class shall automatically be deemed a Class Member whose rights and claims with respect to the Non-FLSA Released Claims (defined in Settlement Agreement, IX.A.2.) are determined by the Court's Final Order Approval of the Class Action Settlement and the other rulings in the action, and said Class Member's rights to pursue any Non-FLSA Released Claims will be extinguished and said Class Member will not be permitted to recover from the Maximum Settlement Amount.

(c)    Objections, which must include a written statement of the grounds of the objection and all supporting papers, must be filed with the District Court as described in the Notice of Pendency of Class Action and Proposed Settlement on or before **December 14, 2012**, and served on Counsel for the Plaintiffs and on Counsel for Defendant.

(d)    Claim Forms/FLSA Consent Forms must be mailed to the Claims Administrator, postmarked on or before **December 14, 2012**.

8.    IT IS FURTHER ORDERED that the Final Approval Hearing shall be held before the undersigned at **9:30 a.m. on January 29, 2013** at the above-entitled court located at the 940 Front Street, Courtroom 3, San Diego, California 92101 to consider the fairness, adequacy and reasonableness of the proposed Settlement preliminarily approved by this Order of Preliminary Approval, and to consider the application of Class Counsel Cohelan, Khoury & Singer and Michael P. Sousa for an award of

10cv0672

reasonable attorneys' fees, litigation expenses, class representative enhancements, and for costs of claims administration incurred.

9.    IT IS FURTHER ORDERED that all briefs in support of the proposed Settlement, Final Approval Hearing and attorneys' fees, litigation costs, class representative enhancements, and claims administration expenses, shall be served and filed with the Court on or before **January 14, 2013**.

10.   IT IS FURTHER ORDERED that any party to this case, including Class Members, may appear at the Final Approval Hearing in person or by counsel, and may be heard to the extent allowed by the Court, in support of or in opposition to the Court's determination of the good faith, fairness, reasonableness and adequacy of the proposed Settlement, the requested attorneys' fees and litigation expenses and class representative enhancement payments and any Order of Final Approval and Judgment regarding such Settlement.

11.   IT IS FURTHER ORDERED that if, for any reason, the Court does not execute and file an Order of Final Approval and Judgment, or if the Effective Date of Settlement does not occur for any reason whatsoever, the Settlement Agreement and the proposed Settlement subject of this Order and all evidence and proceedings had in connection therewith, shall be null and void and without prejudice to the status quo ante rights of the parties to the litigation as more specifically set forth in the Settlement Agreement.

12.   IT IS FURTHER ORDERED that, pending further order of this Court, all proceedings in this matter except those contemplated herein and in the Settlement Agreement are stayed.

10cv0672

1    The Court expressly reserves the right to adjourn or continue the Final Approval Hearing

2  from time-to-time without further notice to the Class Members.

3

4  DATED: September /__, 2012

       HON. ROGER T. BENITEZ
5                                                  United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 19 -